

Eastern District of Kentucky
FILED
NOV 30 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-691-GWU

MICHAEL A. MCGREGOR,                                                 PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

McGregor

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

McGregor

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

McGregor

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michael A. McGregor, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of daily cannabis abuse and dependence "by admission and reportedly in remission since 5/04/2004," recently diagnosed schizophrenia (disorganized type) versus recently diagnosed schizoaffective disorder with a history of panic attacks, recently diagnosed depression, recently diagnosed anxiety disorder versus "possible" generalized anxiety disorder with episodic panic, a history of psychosis (in good remission), and hypertension. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. McGregor retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he were capable of medium level exertion, and also had the following non-exertional impairments. (Tr. 541). He: (1) could frequently climb ramps and stairs; (2) could never climb ladders, ropes, or scaffolds; (3) needed to avoid unprotected heights, moving machinery, and excessive noise in the workplace; and (4) required a "low stress, entry-level non-production quota work environment" with simple, repetitive, 1-2 or at the most 3-step work procedures with minimal change in work routines and minimal exposure to the general public. (Tr. 541-2). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 545-8).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

One of the plaintiff's allegations was mental difficulties, which he described at the administrative hearing as difficulty with concentration and handling stress (Tr. 519), difficulty coping with people and going into public places along with anxiety attacks (Tr. 529-30) as well as a recent psychiatric hospitalization for hallucinations

(Tr. 533-4). He did admit to having a history of marijuana abuse, although he stated that he had not used it since the psychiatric admission. (Tr. 535, 539).

Although the plaintiff was psychiatrically treated in 1989 and 1990 as a teenager for conditions including major depressive disorder, oppositional defiant disorder, and alcohol and cannabis abuse (e.g., Tr. 150), he had no record of mental health treatment as an adult until being admitted to the Appalachian Regional Hospital (ARH) on April 30, 2004 on a 72-hour Court-ordered admission. (Tr. 226). Reportedly, he had been using cannabis daily, had not slept or eaten properly for five days due to watching out for people who were trying to poison him, was digging his own grave, threatened to kill himself, and thought there was a "crack machine" under his house. (Tr. 226). He was diagnosed with a psychotic disorder and cannabis dependence, with an admission Global Assessment of Functioning (GAF) score of 30, reflecting a serious impairment. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. However, the treating psychiatrist, Dr. Lloyd K. Bentley, stated that the patient made "wonderful progress" during his admission, was no longer psychotic, felt relaxed, realized that he had not been sleeping or eating properly and had been abusing marijuana, and described his medications, including Zyprexa, as "wonderful." (Tr. 226-7). The GAF on discharge was 60. (Tr. 227). This is equivalent to "moderate" symptoms per the DSM-IV-TR. Dr. Bentley felt that Mr. McGregor had a good prognosis provided he

abstained from cannabis and continued with medication and outpatient therapy. (Id.). No specific restrictions were given.

Approximately a month later, Mr. McGregor sought treatment at the Midtown Community Mental Health Center in Indianapolis, Indiana, his hometown, stating that he had a history of schizophrenia which had recently been diagnosed in Kentucky and had an "outburst" today, at which he was "talking crazy," thought he was still out in the country, and was thinking of flowers. (Tr. 324). He also described poor sleep and appetite and a fear of large crowds. (Id.). He described his previous hospitalization and stated that he stopped taking Zyprexa after one month because it caused abdominal pain. (Id.). Drug use was denied. A mental status examination noted possible psychomotor retardation, latency of speech, a blunted affect, and "fair" insight and judgment. (Id.). The staff psychiatrist diagnosed "disorganized schizophrenia by history," depression, anxiety, and "rule out" panic disorder with agoraphobia and post traumatic stress disorder. (Tr. 325). Mr. McGregor's GAF score was given as 65, reflecting only mild symptoms, and he was given prescriptions for Zoloft and Quetiapine and asked to follow up in two weeks. (Id.). Another psychiatrist, Dr. Scott Levine, apparently assigned a moderate-symptom GAF score of 57 on July 1, 2004, however. (Tr. 309-10).

Finally, Mr. McGregor underwent a consultative psychological examination by Dr. Howard Wooden, a psychologist, on August 19, 2004. (Tr. 221). The plaintiff's

wife described the problems that had led to his psychiatric hospitalization, and noted the plaintiff's complaints of panic attacks and difficulty working with groups of people. (Tr. 221-2). Dr. Wooden noted that the plaintiff was slow in responding to questions, but did not appear to be psychotic at the time of evaluation, and concluded that Mr. McGregor had a moderately good adjustment on his current medication. (Tr. 222-3). His impression was possible generalized anxiety disorder with episodic panic, and a history of psychosis in good remission. (Tr. 224). He assessed the plaintiff's GAF at 70, reflecting only mild symptoms, but did not suggest any specific functional restrictions.

State agency psychologists reviewed the record on October 20, 2004 and January 11, 2005, and concluded that Mr. McGregor would have a "moderately limited" ability to handle detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, and to accept instructions and respond appropriately to criticism from supervisors. (Tr. 362-4). They also concluded in their elaborations on the preceding capacities that the claimant was "capable of performing simple repetitive tasks on a sustained basis without special consideration." (Tr. 364).

The ALJ did not discuss or even mention the findings of the state agency psychologists as required in 20 C.F.R. Section 404.1527(f)(1)(i), and, even in restated form, his hypothetical question did not contain a restriction on working in

McGregor

coordination with or proximity to others, except in terms of working with the general public. Both of these factors need to be addressed on remand. The Sixth Circuit has held that it is an elementary principle of administrative law that an agency is bound to follow its own regulations. <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004). In the present case, the failure to include the restrictions as given by the state agency psychologists could affect the jobs and job numbers given by the VE, since the DOT sections cited by the ALJ are unclear as to whether the jobs are performed in coordination with or proximity to others.[1] Therefore, it cannot be said with certainty that the error was harmless.

The decision will be remanded for further consideration.

This the __30__ day of November, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

---

[1] The VE cited the medium job of janitor/cleaner, and said that it corresponded with DOT Section 381.687-022. This section discusses the job title of "Cleaner, Laboratory Equipment." He also cited DOT Section 323.687-014, "Cleaner, Housekeeping." (Tr. 546).